T.C. Memo. 2009-187


UNITED STATES TAX COURT


EUGENE AND GLENDA DOLLANDER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 4936-08.                    Filed August 19, 2009.


Eugene and Glenda Dollander, pro sese.

<u>Randall L. Eager</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

JACOBS, <u>Judge</u>:  Respondent determined for 2005 a deficiency in petitioners' income tax of $16,918 and an accuracy-related penalty of $3,384.  After concessions by petitioners, the issues before the Court are:  (1) Whether petitioners are liable for the 10-percent additional tax under section 72(t) with respect to an early distribution from a qualified retirement plan, and (2)

whether petitioners are liable for the accuracy-related penalty pursuant to section 6662(a).

Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for 2005, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated, and they are so found. We incorporate by reference the parties' stipulation of facts and accompanying exhibits. At the time they filed their petition, petitioners resided in Georgia. Glenda Dollander is a party hereto as a consequence of filing a joint return with Eugene Dollander (hereinafter referred to as petitioner).

I.   Petitioner's Employment and Medical History

Petitioner worked for the Department of Veterans Affairs, previously known as the Veterans' Administration (the VA), from June 21, 1985, until April 7, 2006. During 2004 he worked at the VA medical center in Augusta, Georgia, as a staff nurse in its triage section, which dealt with evaluating individuals having psychiatric emergencies.

On June 30, 2004, an individual petitioner evaluated died within an hour thereafter. As a consequence of this incident, petitioner was reassigned to a clerical position. Petitioner thereafter attended numerous administrative hearings, which,

combined with the strain of the incident itself, caused petitioner to suffer mental health difficulties.

On October 6, 2004, petitioner was seen by Dr. Simon Sebastian of the Medical College of Georgia. He was diagnosed with posttraumatic stress disorder, depressive disorder, and bipolar type II, depressed.[1] On October 29, 2004, Dr. Sebastian sent a letter to the VA stating that (1) petitioner had been referred to Dr. Susan Sato for psychotherapy, (2) petitioner's prognosis for recovery was good, and (3) petitioner should be restricted to light duty for at least a month. On January 7, 2005, Dr. Sebastian wrote a second letter to the VA stating that although petitioner had begun psychotherapy sessions with Dr. Sato, petitioner's condition had not significantly changed and that he should continue to be restricted to light duty for 6 months. The letter further advised that in the context of petitioner's emotional problems, light duty implies assigning petitioner to tasks that are less demanding than his previous assignment; "in other words he [petitioner] should not be assigned to dealing with emergency situations and medication administration."

Throughout this period, petitioner's struggle with the VA escalated. Petitioner was accused of not performing his duties

---

[1]Over time, petitioner also was diagnosed with hypertension, renal calculi, spina bifida, sleep apnea, back pain, and occupational and social problems.

adequately.  In February 2005 petitioner was suspended from work without pay.  Petitioner, in turn, initiated worker's compensation and equal employment opportunity lawsuits against the VA.

At the end of his work suspension period petitioner was taken off light duty and transferred to a job in a locked psychiatric unit in Minnesota.  Petitioner felt this new assignment required him to perform tasks more demanding than those required by light duty.  When the VA refused to reconsider its decision, petitioner used his accumulated leave in an effort to postpone the assumption of the duties assigned to him in Minnesota.  (The record is not entirely clear, but it appears that after petitioner exhausted his leave, he did not report to the Minnesota facility.)  Petitioner was then charged with being absent from work, and the VA took disciplinary action. Throughout this period, petitioner received his full pay with the exception of the February 2005 suspension period.

On May 11, 2005, petitioner submitted a U.S. Office of Personnel Management Standard Form 3112A, Applicant's Statement of Disability.  This form is used when an employee requests retirement because of a disability.  On the form petitioner described his medical conditions and how these conditions affected his work.  In describing "other restrictions on your activities imposed by your illness", petitioner referenced his

doctor's recommendation that he be limited to light duty. Petitioner further noted that because of his medical conditions, he had requested assignment to either one of two nursing jobs or a human resources position that were within the range of the light duties he was capable of performing, but the VA did not grant his request.

In December 2005 while continuing to work for the VA petitioner began to manage his family's farm in Minnesota as well as his own rental property in Georgia. These activities required petitioner to travel from Georgia to Minnesota approximately four times during 2005.

In April 2006 petitioner retired from the VA. Initially petitioner was classified as having retired under an optional retirement. This classification was changed to FERS (Federal Employee Retirement System) disability retirement. (FERS disability retirement is a benefit provided to protect an employee who is no longer able to provide useful and efficient service in his current grade or pay level because of a medical condition.) Approximately 1 month after he retired petitioner began full-time work as a nurse with the State of Georgia Community Services Board of East Central Georgia at Serenity Behavioral Health Systems.

II.  Petitioner's Thrift Savings Plan Distributions and Other
     Income

While petitioner was employed with the VA, he established a
thrift savings plan (TSP) account.  (TSP is the Federal
Government plan equivalent to the private sector section 401(k)
plan.[2])  During 2005 while he was employed with the VA,
petitioner filed Form TSP-76, Thrift Savings Plan Financial
Hardship In-Service Withdrawal Request, and received a
$158,310.42 financial hardship distribution.

Petitioners received the following items of income that were
omitted on their 2005 Federal income tax return:

| Income Type | Source | Amount |
|---|---|---|
| Interest | Edward D. Jones & Co. | $71 |
| Interest | Wachovia Bank N.A. | 34 |
| Cancellation of debt | Citibank South Dakota NA | 2,745 |
| Cancellation of debt | Citibank South Dakota NA | 1,499 |

Petitioners concede that they should have reported these items as
income in 2005.

Petitioners engaged H&R Block to prepare their 2005 tax
return.  H&R Block has prepared petitioners' income tax returns
since 1967.

---

[2]See infra p. 7.

OPINION

I. 10-Percent Additional Tax on Early Distributions

   A. Introduction

Section 72(t)(1) imposes a 10-percent additional tax on any distribution from a "qualified retirement plan" that fails to satisfy one of the statutory exceptions in section 72(t)(2).[3] TSP is a qualified retirement plan, and the 2005 distribution of $158,310.42 was an early distribution made before petitioner attained the age of 59-1/2. See secs. 4974(c)(1), 7701(j)(1).[4]

---

[3]Sec. 72(t)(1) provides:

    SEC. 72(t). 10-Percent Additional Tax on Early Distributions from Qualified Retirement Plans.--

       (1) Imposition of additional tax.--If any taxpayer receives any amount from a qualified retirement plan (as defined in section 4974(c)), the taxpayer's tax under this chapter for the taxable year in which such amount is received shall be increased by an amount equal to 10 percent of the portion of such amount which is includible in gross income.

[4]Sec. 4974(c)(1) provides:

    SEC. 4974(c). Qualified Retirement Plan.--For purposes of this section, the term "qualified retirement plan" means–
       (1) a plan described in section 401(a) which includes a trust exempt from tax under section 501(a),

Similarly, sec. 7701(j) provides:

    SEC. 7701(j). Tax Treatment of Federal Thrift Savings Fund.--

       (1) In general.--For purposes of this title–

          (continued...)

Accordingly, the 10-percent additional tax applies to petitioner's $158,310.42 distribution unless an exception applies.

B.  Petitioner's Financial Hardship Argument

Petitioner contends that he should not be subject to the 10-percent additional tax of section 72(t) because he requested his TSP distribution, and it was approved, as a "financial hardship in-service withdrawal" arising from negative monthly cashflow. Petitioner's contention is flawed.  Section 72(t) is explicit: if any taxpayer receives any amount from a qualified retirement plan, the taxpayer's tax shall be increased by an amount equal to 10 percent of the portion of such amount which is includable in gross income, unless one of the exceptions enumerated in section 72(t)(2) applies.  Financial hardship is not one of the exceptions in section 72(t)(2).  See Milner v. Commissioner, T.C. Memo. 2004-111 (no "umbrella hardship exception"); Gallagher v. Commissioner, T.C. Memo. 2001-34 ("There is, however, no hardship exception in the controlling statutes.").

---

[4](...continued)

> (A) the Thrift Savings Fund shall be treated as a trust described in section 401(a) which is exempt from taxation under section 501(a);
>
> (B) any contribution to, or distribution from, the Thrift Savings Fund shall be treated in the same manner as contributions to or distributions from such a trust; * * *

C.  Petitioner's Disability Argument

Petitioner further maintains he received the 2005 TSP distribution because he was disabled and that section 72(t)(2)(A)(iii) excepts distributions from a qualified retirement plan that are "attributable to the employee's being disabled within the meaning of subsection (m)(7) [of section 72]".  Section 72(m)(7) defines "disabled" for purposes of section 72 as follows:

> For purposes of this section, an individual shall be considered to be disabled if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration.  An individual shall not be considered to be disabled unless he furnishes proof of the existence thereof in such form and manner as the Secretary may require.

The determination of whether an impairment constitutes a disability is made with reference to all facts in the case.  Sec. 1.72-17A(f)(2), Income Tax Regs.  The burden is on petitioner to prove that he meets the definition of "disabled".  See sec. 72(m)(7).

Section 1.72-17A(f)(2), Income Tax Regs., provides examples of impairments which would ordinarily be considered as preventing substantial gainful activity:

> (i) Loss of use of two limbs;
>
> (ii) Certain progressive diseases which have resulted in physical loss or atrophy of a limb, such as diabetes, multiple sclerosis, or Buerger's disease;

(iii) Diseases of the heart, lungs or blood vessels * * *;

(iv) Cancer which is inoperable and progressive;

(v) Damage to the brain or brain abnormality which has resulted in severe loss of judgment, intellect, orientation, or memory;

(vi) Mental diseases (e.g., psychosis or severe psychoneurosis) requiring continued institutionalization or constant supervision of the individual;

(vii)Loss or diminution of vision * * * [of a specified severity];

(viii) Permanent and total loss of speech;

(ix) Total deafness uncorrectible by a hearing aid.

The regulations point out that the existence of one or more of the impairments described therein "will not, however, in and of itself always permit a finding that an individual is disabled as defined in section 72(m)(7)." Id. (flush language). Furthermore, the regulations caution that any impairment must be evaluated in terms of whether it does in fact prevent the individual from engaging in his customary or any comparable substantial gainful activity. Id. An impairment which is remediable does not constitute a disability, and an individual will not be deemed disabled if the impairment can be diminished to the extent that the individual can engage in his customary or any comparable substantial gainful activity. Kopty v. Commissioner, T.C. Memo. 2007-343, affd. 313 Fed. Appx. 333 (D.C. Cir. 2009); sec. 1.72-17A(f)(4), Income Tax Regs. In order to

meet the requirements of section 72(m)(7), the regulations provide that "an impairment must be expected either to continue for a long and indefinite period or to result in death." Sec. 1.72-17A(f)(3), Income Tax Regs.

Petitioner contends that he is disabled and notes that he was classified as disabled for purposes of FERS retirement status in 2006. There is no question that petitioner suffered from mental and physical illnesses. But in 2005, the year in which the TSP distribution was made, the record does not support petitioner's contention that he was disabled for purposes of section 72(t)(2)(A)(iii) and (m)(7).

As noted supra pp. 9-11, a taxpayer is considered disabled for purposes of section 72(t)(2)(A)(iii) and (m)(7) only if he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued or indefinite duration. The regulations contemplate that only medical conditions of a nature so severe as to prevent substantial gainful activity result in a taxpayer's being considered disabled. According to the example in the regulations, a mental impairment that would prevent substantial gainful activity consists of psychosis or severe psychoneurosis requiring continued institutionalization or constant supervision of the individual. See sec. 1.72-17A(f)(2)(vi), Income Tax Regs.

While petitioner required continuing treatment for his illnesses, he did not require institutionalization or constant supervision. See Dwyer v. Commissioner, 106 T.C. 337, 342 (1996) ("periodic professional consultation (such as petitioner's) alone does not, in our judgment, equate with the constant supervision envisioned by the regulation").

The regulations also provide that an impairment which is remediable does not constitute a disability. Sec. 1.72-17A(f)(4), Income Tax Regs. In this regard, the record reflects that petitioner's illness was expected to be remediable and that he was expected to fully recover.

Finally, the record shows that petitioner engaged in substantial gainful activity in 2005. As we previously stated, we "equate 'substantial gainful activity' in this context with an 'actual and honest objective of making a profit.'" Dwyer v. Commissioner, supra at 341.

In 2005 petitioner continued working at the VA at the same pay grade and earning the same salary as before his impairment was diagnosed. Moreover, petitioner engaged in a business activity throughout the year that required him to travel numerous times, back and forth, between Georgia and Minnesota. We are satisfied that although petitioner did not earn a profit in this business activity, he participated in this activity with an intent to earn a profit. See id. Furthermore, after retiring

from the VA in 2006, petitioner got a full-time job with another employer.  In sum, we find that petitioner was not disabled for purposes of section 72(t)(2)(A)(iii) and (m)(7) in 2005.

## II.  Section 6662(a) Accuracy-Related Penalty

Section 6662(a) imposes an accuracy-related penalty equal to 20 percent of the underpayment of tax attributable to, inter alia, a substantial understatement of income tax, as provided in section 6662(b)(2), or negligence or disregard of rules or regulations, as provided in section 6662(b)(1).  A substantial understatement of income tax pursuant to section 6662(b)(2) is equal to the excess of the amount of tax required to be shown on the tax return over the amount of tax shown on the return.  Sec. 6662(d)(2)(A).  The understatement is substantial in the case of an individual if it exceeds the greater of 10 percent of the tax required to be shown or $5,000.  Sec. 6662(d)(1)(A).  Negligence is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances.  Jean Baptiste v. Commissioner, T.C. Memo. 1999-96.  Respondent has the burden of production with respect to the section 6662(a) accuracy-related penalty.  See sec. 7491(c).  Respondent has met his burden of production.

The accuracy-related penalty does not apply to any part of an underpayment of tax if it is shown that the taxpayer acted with reasonable cause and in good faith.  Sec. 6664(c)(1).  This

determination is made on a case-by-case basis, taking into account all the pertinent facts and circumstances.  Sec. 1.6664-4(b)(1), Income Tax Regs.  Petitioners bear the burden of proving that they had reasonable cause and acted in good faith.  See Higbee v. Commissioner, 116 T.C. 438, 446 (2001).

Petitioners relied on H&R Block to prepare their 2005 tax return and their tax returns for every year prior thereto since 1967.  There is no evidence that their return preparer was not competent or that petitioners were not justified in relying on the preparer's expertise in preparing their tax returns.  Moreover, it does not appear from the record that petitioners were anything but forthright with respect to information they gave their preparer, including the receipt of the $158,310.42 distribution from petitioner's TSP in 2005.

This is not a situation of omission of income or an exaggeration of deductions, but rather the proper reporting of income governed by the Code, the regulations, and the interpretation of the relevant statutory provisions by numerous cases.  On the record before us, we are satisfied that petitioners acted in good faith and with reasonable cause with respect to that portion of the underpayment relating to the 10-percent additional tax under section 72(t).  Such was not the case with respect to the understatement relating to the omitted interest and cancellation of debt income which was negligently

omitted (unexcused by reasonable cause or good faith) from petitioners' 2005 income.

    To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.